IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JEFFREY ROBERTSON and WANPHEN ROBERTSON,<br><br>Plaintiffs,<br><br>v.<br><br>IHC HEALTH SERVICES, INC. dba UTAH VALLEY REGIONAL MEDICAL CENTER; CRAIG S. COOK, M.D., P.C.; CRAIG S. COOK, M.D.; SAMER A. SALEH, M.D.; KURT O. BODILY M.D.; THOMAS A. DOCKINSON, M.D.; MATTHEW B. SPERRY, M.D.; UTAH VALLEY SPECIALTY HOSPITAL, INC.; and TALA'AT AL-SHUQAIRAT, M.D.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00053-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

This case comes before the court on two motions for summary judgment. Defendant Utah Valley Specialty Hospital moves for summary judgment against plaintiffs Jeffrey Robertson ("Mr. Robertson") and Wanphen Robertson ("Ms. Robertson") (collectively, "Plaintiffs" or "the Robertsons") on the grounds that the two-year statute of limitations set forth in the Utah Health Care Malpractice Act bars the Robertsons' claims. ECF No. 100. Defendants IHC Health Services, Inc. dba Utah Valley Regional Medical Center; Samer A. Saleh, M.D.; Matthew B. Sperry, M.D.; Craig S. Cook, M.D.; Craig S. Cook, M.D., P.C.; Kurt O. Bodily, M.D.; Thomas A. Dickinson,

M.D.; and Tala'at Al-Shuqairat, M.D.[1] also move for summary judgment against the Robertsons on the same grounds. ECF No. 102. For the reasons stated below, the court GRANTS both motions for summary judgment.

## FACTUAL BACKGROUND

### I. JEFFREY ROBERTSON'S MEDICAL CARE

On September 4, 2014, Mr. Robertson presented at Utah Valley Regional Medical Center's emergency department with severe abdominal pain. ECF No. 111-1 at 3. A CT scan revealed evidence of acute pancreatitis and cholelithiasis. *Id.* at 6. The emergency department discharged Mr. Robertson to the ICU where Dr. Kurt Bodily (gastroenterologist) and Dr. Craig Cook (general surgeon) were consulted. *Id.* at 5. Over the course of the next two months, Dr. Cook performed several surgeries on Mr. Robertson to remove necrotic material and abscesses and to place drains. *Id.* at 6-7.

On October 30, 2014, Mr. Robertson's providers discharged him to Utah Valley Specialty Hospital. *Id.* at 7. There, Mr. Robertson received treatment from Dr. Tala'at Al-Shuqairat for about five months. ECF No. 111-2 at 6-10. Dr. Cook and his team also continued to follow up with Mr. Robertson at Utah Valley Specialty Hospital. *Id.* at 7.

On March 6, 2015, Mr. Robertson was transferred to Salt Lake Regional Medical Center ("SLRMC") for inpatient rehabilitation. ECF No. 111-3 at 2. Soon after admission to SLRMC, Mr. Robertson's gastronomy tube was accidentally pulled out, prompting a CT scan. *Id.* at 4. The CT scan demonstrated significant abscesses in Mr. Robertson's abdomen. *Id.* On March 9, 2015, Mr.

---

[1] On April 26, 2022, the parties filed a stipulated voluntary dismissal of Samer A. Saleh, Kurt O. Bodily, Thomas A. Dickinson, Matthew B. Sperry, and Tala'at Al-Shuqairat. ECF No. 117. The court subsequently terminated the aforementioned parties. Accordingly, the court construes ECF No. 102 as filed by IHC Health Services, Inc. dba Utah Valley Regional Medical Center; Craig S. Cook, M.D.; and Craig S. Cook, M.D. P.C. only.

2

Robertson was admitted to the ICU at SLRMC where Dr. Legrand Belnap performed surgery to remove the necrotic portion of the pancreas and drain the abscesses. *Id.* at 10-11. Mr. Robertson underwent several additional surgeries related to the same issue while at SLRMC. *Id.* at 11.

In connection with the March 9, 2015 surgery, Mr. and Ms. Robertson met with Dr. Belnap. Dr. Belnap expressed disgust and unhappiness with Mr. Robertson's prior medical care. ECF No. 101-1 at 5; ECF No. 101-2 at 6. Before the surgery, he informed Ms. Robertson that if Mr. Robertson did not undergo surgery, Mr. Robertson would likely die. ECF No. 101-1 at 5; ECF No. 101-2 at 6. After the surgery, Dr. Belnap informed Mr. Robertson that his prior physicians performed the wrong surgery—they should have removed the entire pancreas, not ten percent of the pancreas. ECF No. 101-1 at 6.

Mr. Robertson spoke with a friend, Steven Clarke ("Mr. Clarke"), in 2015 about his medical experience. Mr. Clarke testified that Mr. Robertson "believed that his care wasn't correct." ECF No. 101-3 at 6. Specifically, Mr. Robertson told Mr. Clarke that "his original doctor had not followed the current standing SOP, the standard operating procedure for dealing with his particular problem that he presented with, and that that had caused complications." *Id* at 7. While Mr. Clarke did not assist Mr. Robertson in obtaining legal counsel, Mr. Clarke testified in his deposition that Mr. Robertson "did mention to me initially that he was looking at filing a case." *Id.*

## II.  UTAH HEALTH CARE MALPRACTICE ACT

At all times relevant here, the Utah Health Care Malpractice Act required plaintiffs to overcome a series of hurdles before filing a malpractice action against a health care provider. *See* UTAH CODE §§ 78B-3-401 through 426. The purpose of the Act is, in part, "to provide a reasonable time in which actions may be commenced against health care providers while limiting that time to

3

a specific period for which professional liability insurance premiums can be reasonably and accurately calculated." *Id.* § 78B-3-402(3).

The Act first requires plaintiffs to give prospective defendants ninety days' notice of intent to commence the action. *Id.* § 78B-3-412(1)(a). Then, plaintiffs must present their case to a prelitigation panel which determines whether the claims have "merit" or "no merit." *Id.* § 78B-3-416(2)(a) and -418(2). If the panel finds "no merit," the plaintiff must present an affidavit of merit from both the plaintiff's attorney and a health care provider stating that there is a reasonable and meritorious cause for filing the medical malpractice action. *Id.* § 78B-3-423(1)-(2). At the time that the Robertsons filed this case, the Utah Health Care Malpractice Act required plaintiffs to obtain a certificate of compliance—which the Division of Occupational and Professional Licensing ("DOPL") issued after a finding of "merit" or after submission of the proper affidavits—in order to file a malpractice claim.[2] *Id.* § 78B-3-412(1)(b).

---

[2] Plaintiffs are no longer required to obtain a certificate of compliance from DOPL in order to file a case in court. After Plaintiffs filed this case, the Utah Supreme Court deemed the certificate of compliance requirement an unconstitutional violation of separation of powers because it requires DOPL to exercise a core judicial function. *See Vega v. Jordan Valley Med. Ctr., LP*, 449 P.3d 31, 35 (Utah 2019) (concluding that "Utah Code section 78B-3-412(1)(b), which requires a certificate of compliance from DOPL in order for a plaintiff . . . to initiate a malpractice action against a health care provider, is unconstitutional"). The discretionary decisions by DOPL as to whether to find a claim meritorious or to accept a claimant's affidavits of merit operated to insulate certain claims from review in the courts. Therefore, the court struck down the sections of the Malpractice Act requiring a plaintiff to obtain a certificate of compliance prior to filing a lawsuit. *Id.* Additionally, the Utah Supreme Court "declare[d] the language in Utah Code section 78B-3-423(7), which mandates a dismissal of any malpractice action filed without a certificate of compliance, to be unconstitutional." *Id.*

At oral argument, Plaintiffs' counsel suggested that the fact that the Utah Supreme Court later struck down the certificate of compliance requirement rendered it unfair for the court to apply the statute of limitations to the Robertsons. But the court cannot ignore the statute of limitations based on a holding—which the Utah Supreme Court did not apply retroactively—made after the statute of limitations had run. Moreover, the Robertsons had the opportunity to obtain a certificate of compliance within the statute of limitations by submitting the required affidavits of merit. The Robertsons simply failed to do so. Therefore, *Vega* does not control the outcome here.

4

The Act also contains a two-year statute of limitations. *Id.* § 78B-3-404(1). However, the Act provides for tolling during the prelitigation panel proceedings. *Id.* § 78B-3-416(3)(a). Specifically, filing a request for prelitigation panel review tolls the statute of limitations until the later of (1) sixty days after the prelitigation panel issues an opinion, (2) sixty days after DOPL issues a certificate of compliance, or (3) 180 days after the filing of the request for prelitigation panel review (or any longer period required to complete the prelitigation hearing, as agreed to by all parties in writing). *Id.*

### III. PROCEDURAL HISTORY

The Robertsons engaged in the prelitigation review process as follows. Younker Hyde Macfarlane PLLC ("Younker"), the law firm that initially represented the Robertsons, filed a Notice of Intent to Commence Action on behalf of Mr. Robertson on August 18, 2016. ECF No. 111-4 at 1. On January 18, 2017, DOPL notified counsel for the Robertsons that the panel found the action, dubbed Case No. PR 16-08-014, non-meritorious. ECF No. 111-5 at 1. The notice advised counsel that, should counsel wish to seek a certificate of compliance, it must file affidavits of merit by March 30, 2017. *Id.* On February 14, 2017, Younker withdrew as counsel. ECF No. 111-6 at 9-10. On February 22, 2017, Younker requested a sixty-day extension to file the required affidavits of merit, which DOPL granted.[3] *Id.* at 3-4. DOPL set the new due date for affidavits of merit as May 19, 2017. *Id.* at 1. After receiving no affidavits from Mr. Robertson or counsel, DOPL closed the case on May 31, 2017. ECF No. 111-7 at 4.

---

[3] Younker appears to have filed this request for extension to file the affidavits of merit after Younker withdrew as counsel for Mr. Robertson. The court is unsure of why the timeline unfolded as such. A generous reading suggests that Younker wished to provide Mr. Robertson with sixty days to find counsel who could file the affidavits of merit or to file the affidavits of merit himself.

Nothing occurred in the case for over a year after DOPL closed the case. On July 17, 2018 Mr. Robertson retained new counsel. One day later, Mr. Robertson's new counsel, Anne Cohen, requested a sixty-day extension to file the affidavits of merit. *Id.* at 1, 8. DOPL informed Ms. Cohen that the matter had been closed and that she could refile the entire matter if she wished. *Id.* at 1.

Ms. Cohen then filed a second Notice of Intent to Commence Legal Action for Medical Malpractice on August 8, 2018. ECF No. 111-8. Ms. Cohen attached affidavits of merit from herself as well as Dr. Robert Rick Selby. ECF Nos. 111-9, 111-10. On August 16, 2018, Ms. Cohen requested a prelitigation screening panel. ECF No. 111-11. DOPL dubbed the new case No. PR 18-08-024 and granted Ms. Cohen's request on August 20, 2018. ECF No. 111-12. Between August 22, 2018 and August 29, 2018, various counsel entered appearances on behalf of Defendants. ECF Nos. 111-13 through 111-16. Ms. Cohen subsequently filed an amended Notice of Intent to Commence Legal Action for Medical Malpractice that added Ms. Robertson to the action. ECF No. 111-17. After some back and forth, the parties filed a stipulation waiving the prelitigation hearing panel on November 28, 2018. ECF Nos. 111-18, 111-19. DOPL issued a certificate of compliance in Case No. PR 18-08-024 on December 17, 2018. ECF No. 111-21. The Robertsons filed the present action on January 24, 2019. ECF No. 2.

In sum, the Robertsons filed two actions with DOPL as follows. The initial Notice of Intent was assigned Case No. PR 16-08-014 by DOPL. DOPL did not issue a certificate of compliance in Case No. PR 16-08-014. Rather, DOPL closed the case after the Robertsons failed to file affidavits of merit as required by Utah law. The second Notice of Intent, as well as its amendment, was assigned Case No. PR 18-08-024. DOPL issued a certificate of compliance in Case No. PR 18-08-024.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted).

"At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Instead, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

**ANALYSIS**

The Utah Health Care Malpractice Act establishes the statute of limitations for medical malpractice actions. Specifically,

> [a] malpractice action against a health care provider shall be commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect, or occurrence.

UTAH CODE § 78B-3-404(1). However, as discussed below, the statute also contains provisions that toll the two-year statute of limitations under certain circumstances.

Defendants contend that Plaintiffs failed to comply with the statute of limitations for medical malpractice actions.[4] Addressing Defendants' argument requires the court to answer two separate questions. First, on what date did Plaintiffs' cause of action begin to accrue? Second, on what date did the statute of limitations for Plaintiffs' cause of action run, considering statutory tolling?

The court determines that Plaintiffs' cause of action began accruing on March 9, 2015 and that Plaintiffs had until December 20, 2017 to file the instant lawsuit. Plaintiffs filed this lawsuit on January 24, 2019. Because Plaintiffs filed their lawsuit after the statute of limitations ran, the court GRANTS summary judgment for Defendants.

## I.     DATE OF DISCOVERY

The court first identifies the date on which the Robertsons' cause of action began to accrue. Under Utah's medical malpractice discovery rule, a patient injured by negligent medical treatment has two years from the date of *discovery* of his or her legal injury in which to file suit. *Id.* § 78B-3-404(1) (requiring that suit be "commenced within two years after the plaintiff or patient *discovers*, or through the use of reasonable diligence *should have discovered* the injury"). A "legal injury" encompasses "both discovery of injury and the negligence which resulted in the injury." *Jensen v. IHC Health Servs., Inc.*, 472 P.3d 935, 938 (Utah 2020) (citation omitted). Therefore, the statute of limitations for a medical malpractice claim begins "the moment when a patient first

---

[4] The Robertsons object that Defendants waived this argument by not raising it during the prelitigation administrative proceedings. But the purpose of the prelitigation proceedings is for the panel to issue "a determination whether each claim against each health care provider has merit or has no merit, and if meritorious whether the conduct complained of resulted in harm to the claimant." UTAH ADMIN. CODE r. 156-78B-14(1). In other words, the panel focuses on the substance of the claims, i.e., "whether there is a basis in fact and law to conclude that the standard of care has been breached and the petitioner had been injured thereby." *Id.* r. 156-78B-2(8). The panel does not make determinations regarding applicability of the statute of limitations—that is the province of the court.

8

has knowledge or constructive knowledge of the facts underlying their malpractice claim—in other words, their legal injury: (1) the physical injury, (2) the causal event of the injury, and (3) that negligence (a breach in the standard of care) caused the injury." *Id.* at 939 (citation omitted).

"[A] patient's mere suspicion that her doctor was negligent is insufficient to trigger the two-year statute of limitations." *Arnold v. Grigsby*, 289 P.3d 449, 454 (Utah 2012). But "absolute or 'certain knowledge' of negligence is not required." *Jensen*, 472 P.3d at 939 (quoting *Arnold*, 289 P.3d at 455). Rather, "[a]ll that is necessary is that the plaintiff be aware of facts that would lead an ordinary person, using reasonable diligence, to conclude that a claim for negligence may exist." *Arnold*, 289 P.3d at 455.

Defendants contend that the Robertsons discovered their claim on March 9, 2015, when Dr. Belnap informed the Robertsons of issues with Mr. Robertson's prior care. As evidence, Defendants point to testimony by the Robertsons and their friend, Steven Clarke, during depositions taken in this case that indicate knowledge of the underlying facts. The Robertsons respond that they did not learn of Mr. Robertson's legal injury until August 18, 2016, the date on which they filed the initial Notice of Intent to Commence Legal Action. In support of their position, the Robertsons cite two sworn declarations they filed with the court indicating that they discovered their legal claim on August 18, 2016.

### A. Defendants' Evidence

Defendants marshal significant evidence that Plaintiffs became aware of their legal injury—and, specifically, that negligence (i.e., a breach in the standard of care) caused the injury—during their conversation with Dr. Belnap on March 9, 2015. First, Mr. Robertson testified in his deposition that Dr. Belnap told him that his prior providers "performed the wrong surgery." ECF No. 101-1 at 5. Specifically, Dr. Belnap informed Mr. Robertson that "they should have removed

9

the entire pancreas, not ten percent." *Id.* at 6. And Dr. Belnap indicated to Mr. Robertson that his state was critical and "[i]f this surgery didn't happen today, you would have been deceased today." *Id.* at 5. Moreover, Mr. Robertson noted that Dr. Belnap asked who had performed his prior surgeries and that Dr. Belnap expressed "disgust" several times with Mr. Robertson's prior care. *Id.* at 5.

Ms. Robertson echoed Mr. Robertson's testimony at her own deposition. When asked whether she understood that Dr. Belnap was "unhappy or upset or critical with the care that Jeffrey had received," Ms. Robertson replied that, "[y]es, I pick[ed] up that concern because Dr. Belnap shook his head and he promised me that 'I will save Jeffrey's life.'" ECF No. 101-2 at 6. To reiterate, counsel again asked Ms. Robertson whether she "understood when Dr. Belnap talked with you and Jeffrey that Dr. Belnap was critical or unhappy with the prior care that Jeff had received." *Id.* at 6-7. Ms. Robertson replied: "I understand that." *Id.* at 7.

Finally, Defendants point to statements made by Mr. Clarke, one of the witnesses designated by Plaintiffs, at his deposition. Mr. Clarke testified that, as of 2015, Mr. Robertson "believed that his care wasn't correct." ECF No. 101-3 at 6. Moreover, Mr. Robertson told Mr. Clarke that "his original doctor had not followed the current standing SOP, the standard operating procedure for dealing with his particular problem that he presented with, and that had caused complications . . . [a]nd that that doctor had saved him by coming in and following the SOP and removing his pancreas." *Id.* at 7. And Mr. Robertson "mention[ed] to [Mr. Clarke] initially that he was looking at filing a case." *Id.*

In sum, the deposition testimony cited by Defendants establishes all three elements of knowledge of a legal injury. First, the Robertsons knew of Mr. Robertson's physical injury because Dr. Belnap informed him that he faced likely death if Dr. Belnap hadn't repaired the injury. Second,

10

the Robertsons knew that Mr. Robertson's care at Utah Valley Regional Medical Center and Utah Valley Specialty Hospital caused the injury because Dr. Belnap inquired as to who had performed the prior surgeries on Mr. Robertson and indicated that Mr. Robertson's prior improper care caused the injury. Third, the Robertsons knew that negligence may have caused the injury based on Dr. Belnap's statement that the doctors at Utah Valley Specialty Hospital performed the wrong surgery. Moreover, while not required to establish a legal injury, the Robertsons demonstrated their awareness of the potential negligence by exploring legal action in the wake of Mr. Robertson's treatment. Accordingly, Defendants have adduced substantial evidence demonstrating that the Robertsons became aware of their legal injury on March 9, 2015. The court now turns to whether the Robertsons' evidence raises a genuine issue of material fact as to the date of discovery.

### B.     *Plaintiffs' Evidence*

The Robertsons respond by advancing two arguments: (1) the sworn declarations submitted by Plaintiffs create a dispute of material facts and (2) Defendants have mischaracterized the deposition testimony such that a genuine issue of material fact remains.[5] The court rejects both arguments.

---

[5] Although not included in their briefing, Plaintiffs' counsel raised an additional rationale at oral argument. Specifically, Plaintiffs' counsel pointed out that the conversations with Dr. Belnap happened during a highly stressful moment, just before and after Mr. Robertson's surgery. Plaintiffs' counsel argued that both Mr. and Ms. Robertson were unlikely to be in a clear state of mind at the time. The court recognizes the difficult situation faced by the Robertsons. However, Plaintiffs' counsel offered no affidavits or other evidence indicating when the Robertsons became aware of the facts underlying their legal claim, if not during the conversation with Dr. Belnap. Moreover, Plaintiffs admitted during their depositions that they remembered the conversation with Dr. Belnap. Because Plaintiffs offered no evidence that the Robertsons were unable to comprehend the views expressed by Dr. Belnap during their conversations with him—indeed, Plaintiffs' counsel relied on mere conjecture about the Robertsons' state of mind at oral argument—the court finds no genuine dispute of material fact as to whether the Robertsons understood Dr. Belnap.

    i.  **Sworn Declarations**

The Robertsons rely on two sworn declarations that they contend create a genuine issue of material fact as to the date they discovered their legal injury. First, Mr. Robertson declares that he "was not aware that [he] had a legal claim for medical malpractice under Utah law until [he] filed and served through former counsel, a Notice of Intent to Commence Action and Request for Prelitigation Panel Review to the State of Utah's Division of Occupational and Professional Licensing (DOPL) on or about August 18, 2016." ECF No. 109 at 3. Second, Ms. Robertson avers that she "was not aware that either Plaintiff Jeffrey Robertson or I had any legal claims until Plaintiff Jeffrey Robertson, through former counsel, filed and served a Notice of Intent to Commence Action and Request for Prelitigation Panel Review to the State of Utah's Division of Occupational and Professional Licensing (DOPL) on or about August 18, 2016."[6] ECF No. 110 at 3.

Defendants contend that Plaintiffs' declarations are tantamount to sham affidavits submitted to create the appearance of a genuine dispute of material fact. Although "[a]n affidavit may not be disregarded solely because it conflicts with the affiant's prior sworn statements," the court may nonetheless disregard a conflicting affidavit if it "constitutes an attempt to create a sham fact issue." *Law Co., Inc. v. Mohawk Constr. & Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir.

---

[6] The date of discovery cannot be August 18, 2016, as suggested by Plaintiffs. In order to seek out a lawyer, Plaintiffs would likely have already been aware of the facts underlying their medical malpractice claim—Mr. Robertson's injury, the causal event behind the injury, and that the injury may have resulted from negligence. And, at minimum, they must have become aware of those facts while speaking with their lawyer in advance of the filing of the August 18, 2016 Notice of Intent. Accordingly, the date of discovery must precede filing of the Notice of Intent. However, the court must still determine if the date of discovery falls on March 9, 2015, or some other date between March 9, 2015 and the date Plaintiffs filed the notice of intent.

2009) (citation and alterations omitted). In determining whether an affidavit or declaration creates a sham fact issue, the Tenth Circuit instructs the court to consider whether:

> (1) the affiant was cross examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.

*Law Co.*, 577 F.3d at 1169 (citation omitted).

As an initial matter, it is not clear that the sworn declarations create a genuine issue of material fact. Both declarations claim that the author was unaware that he or she had any "legal claim" prior to filing the Notice of Intent. But, for purposes of determining the date of discovery, the question is not whether Plaintiffs were aware they had a *legal claim*. Rather, the relevant question is whether Plaintiffs had knowledge or constructive knowledge of the facts underlying their malpractice claim. And, as discussed above, Plaintiffs' depositions demonstrate that they were clearly aware of (1) Mr. Robertson's injury, (2) the cause of Mr. Robertson's injury, and (3) that his injury may have resulted from a medical professional's negligence. Whether Plaintiffs were aware that these facts added up to a potential *legal claim* is not relevant to determining the date of discovery.

But even if Plaintiffs intended to aver that they were unaware of the facts underlying their legal claim—which would run directly counter to their statements in their depositions—their declarations still fail under the sham affidavit doctrine. First, both Plaintiffs had access to all of the pertinent information about their conversation with Dr. Belnap at the time of their depositions, because the depositions happened well after the conversation concluded. Second, there is no evidence that the declarations attempt to explain some confusion that occurred during the deposition. Indeed, Plaintiffs and their lawyers reviewed their depositions and signed off on them without indicating any potential confusion. And finally, while counsel only cross-examined Ms.

13

Robertson during her deposition, counsel had the opportunity to cross-examine Mr. Robertson during his deposition had counsel felt like something needed to be clarified.

In conclusion, the sworn declarations submitted by the Robertsons do not create a genuine issue of material fact as to the date of discovery. The declarations only swear that the Robertsons discovered their legal claim—not the facts underlying their legal claim—at a later date. And even if they had sworn that the Robertsons discovered the facts underlying their legal claim at a later date, the declarations still fail under the sham affidavit doctrine.

### ii. Mischaracterizing Deposition Testimony

Plaintiffs also contend that Defendants have mischaracterized the deposition testimony. Reading the deposition testimony in its full context, Plaintiffs argue, demonstrates a genuine issue of material fact. First, Plaintiffs attempt to infuse doubt by referencing the fact that Ms. Robertson is not a native English speaker and may have misunderstood some of the deposition questions. But Ms. Robertson never indicated that she did not understand any of the questions posed during her deposition. If she needed clarification, she asked for clarification before answering the question. *See, e.g.*, ECF No. 101-2 at 6. Moreover, she used an interpreter to ensure her understanding.

Second, Plaintiffs argue that Ms. Robertson never testified that Dr. Belnap was critical of Mr. Robertson's care. Rather, Plaintiffs contend that Dr. Belnap simply told Ms. Robertson that Mr. Robertson needed another surgery otherwise he would die within a week. While Ms. Robertson understandably remembered Dr. Belnap's statement that Mr. Robertson would have died without an additional surgery, she also clearly understood that Dr. Belnap was critical of Mr. Robertson's prior care. *See* ECF No. 101-2 at 6-7 ("Q: You understood when Dr. Belnap talked with you and Jeffrey that Dr. Belnap was critical or unhappy with the prior care that Jeff had received, right? A: (Through the interpreter) I understand that.").

Similarly, Plaintiffs contend that deposition testimony by Mr. Robertson and Mr. Clarke does not establish Mr. Robertson's knowledge of his legal injury. But Plaintiffs cherry-pick quotes and misapply the standard for legal injury. As discussed above, knowledge of a "legal injury" does not equate to knowledge that the patient has a legal cause of action. Therefore, the fact that Mr. Robertson stated that he did not wonder if he had any legal recourse when he spoke to Dr. Belnap and the fact that Mr. Robertson did not ask Mr. Clarke about seeking legal advice is inapposite. Rather, the standard is whether Mr. Robertson knew of his physical injury, the cause of his injury, and that the injury may have been caused by the negligent act of a medical provider. The fact that Dr. Belnap informed Mr. Robertson that he had previously undergone "the wrong surgery" and that he could have died without the proper surgery easily establishes all three elements. The fact that Mr. Robertson's mind did not immediately jump to legal action has no import.

In sum, the court disregards the Robertsons' declarations as sham affidavits, submitted solely for the purpose of attempting to establish genuine issues of material fact as to when Plaintiffs discovered their legal injury. Absent the declarations, Plaintiffs must rely on their argument that Defendants mischaracterized the deposition testimony. But, as discussed above, the court has reviewed the deposition testimony in its full context and determines that Defendants did not misrepresent the knowledge admitted by Plaintiffs during their depositions. Accordingly, the court determines that there is no genuine issue of material fact as to the date on which Plaintiffs discovered their legal injury: March 9, 2015.

## II.     EFFECT OF STATUTORY TOLLING

The Robertsons further argue that, even if their legal injuries accrued and were discovered no later than March 9, 2015, the proper application of various tolling statutes renders their January

24, 2019 complaint timely.[7] As noted above, the baseline statute of limitations for medical malpractice suits is two years from the date of discovery of a legal injury. UTAH CODE § 78B-3-404(1). Accordingly, absent any tolling, the Robertsons' filing deadline would fall on March 9, 2017, 731 days after the date of discovery.[8]

However, because of the extensive prelitigation requirements contained in the Utah Health Care Malpractice Act, the law also contains tolling provisions applicable to the prelitigation process. Specifically:

> [t]he filing of a request for prelitigation panel review . . . tolls the applicable statute of limitations until the later of:
>     (i) 60 days following the division's issuance of:
>         (A) an opinion by the prelitigation panel; or
>         (B) a certificate of compliance under Section 78B-3-418; or
>     (ii) the expiration of the time for holding a hearing under Subsection (3)(B)(ii) [which is 180 days after the filing of the request for prelitigation panel review or any longer period as agreed upon in writing by all parties].

*Id.* § 78B-3-416(3)(a). Plaintiffs filed a request for prelitigation panel review on August 18, 2016. *See* ECF No. 100 at 9. Therefore, the statute of limitations tolled on August 18, 2016, 528 days after the date of discovery—leaving 203 days to file a lawsuit once the statute of limitations resumed.

---

[7] The Robertsons also argue that they timely filed their action because it falls within the four-year statute of repose in the Utah Health Care Malpractice Act. The statute provides that an action should be commenced within two years of when the plaintiff discovered or should have discovered the injury, "*but not to exceed four years after the date of the alleged act, omission, neglect, or occurrence.*" UTAH CODE § 78B-3-404(1). The statute of repose functions to "abolish a cause of action after a certain period, even if the action first accrues after the period has expired." *Staley v. United States*, No. 2:18-cv-941, 2022 WL 1014909, at *11 (D. Utah Apr. 5, 2022) (quoting *Lee v. Gaufin*, 867 P.2d 572, 576 (Utah 1993)). In other words, if a plaintiff discovers her injury five years after the injury occurred, she would be unable to file her complaint because the statute of repose extinguished her claim—even though the two-year statute of limitations only just began to run. The statute of repose does not, as the Robertsons suggest, extend the statute of limitations beyond the two years outlined in the law.

[8] In this instance, two years is equivalent to 731 days because 2016 was a leap year.

The relevant facts are as follows. The prelitigation panel issued an opinion on January 18, 2017. At that time, DOPL notified counsel for the Robertsons that they needed to file affidavits of merit by March 30, 2017 in order to obtain a certificate of compliance. On February 22, 2017, the Robertsons' counsel requested a 60-day extension to file their merits affidavits. ECF No. 111-6 at 3. DOPL granted the extension, meaning the affidavits were due on May 19, 2017. ECF No. 111-7 at 3. The Robertsons' counsel withdrew and no affidavits were filed by May 19, 2017. Accordingly, DOPL closed the matter on May 31, 2017 without issuing a certificate of compliance.

Returning to the statute cited above, the court considers the three deadlines outlined in the statute. Sixty days following DOPL's issuance of an opinion filed by the prelitigation panel falls on March 19, 2017. Sixty days following DOPL's issuance of a certificate of compliance does not exist because DOPL never issued a certificate of compliance due to Plaintiffs' failure to submit affidavits of merit.[9] And the expiration of time for holding a hearing under Subsection (3)(B)(ii) falls 180 days after the filing of the request for prelitigation panel review, here, February 14, 2017. Therefore, the latest date to end tolling falls on March 19, 2017. But even if the court construes the facts generously for the Plaintiffs and extends the tolling until May 31, 2017—the date on which DOPL declined to issue a certificate of compliance and closed the case—Plaintiffs' claims still fail.

When the tolling ended and running of the two-year limitations period resumed, Plaintiffs had 203 days remaining on their limitations period. Therefore, they must have filed a lawsuit—or taken some additional action that would further toll the statute of limitations—by December 20, 2017 (203 days after May 31, 2017). But the Robertsons took no action prior to that date. Indeed,

---

[9] The Robertsons urge the court to toll the statute of limitations until sixty days after DOPL issued the certificate of compliance in Case No. PR 18-08-024. But that is a separate case from Case No. PR 16-08-014, for which the Robertsons never received a certificate of compliance.

17

the Robertsons did not even retain present counsel until July 17, 2018. Nor did the Robertsons communicate with DOPL in the intervening time.

Once the Robertsons retained new counsel, counsel made a valiant effort to revive the Robertsons' claims. Counsel filed a new notice of intent to commence action, along with affidavits of merit on August 8, 2018. ECF No. 111-8. Counsel followed this filing with a request for a prelitigation screening panel on August 16, 2018. ECF No. 111-11. Normally, this request would have re-tolled the statute of limitations. But by the time counsel filed the request, the statute of limitations on the Robertsons' claims had already run. Filing a new request for a prelitigation screening panel cannot revive a claim for which the statute of limitations has already run. Nor does it create a new statute of limitations period for a claim whose statute of limitations has already run. To permit otherwise would effectively nullify the statute of limitations enacted by the Utah legislature.

Nor does the fact that Plaintiffs later received a certificate of compliance following their second Notice of Intent revive the Robertsons' claim. The certificate of compliance that the Robertsons received pertained to the second Notice of Intent. But, again, refiling the claim in order to obtain a certificate of compliance cannot revive a claim for which the statute of limitations has already run. Consider the implications. Plaintiffs' position would allow a lawyer to refile a closed medical malpractice case any time after DOPL closed the prelitigation proceedings without issuing a certificate of compliance (even if several years had passed), obtain a certificate of compliance, and claim that the statute of limitations did not restart until sixty days following that certificate of compliance. Such a position runs entirely counter to the purposes of the Utah Health Care Malpractice Law, which include "provid[ing] a reasonable time in which actions may be commenced against health care providers while limiting that time to a specific period for which

professional liability insurance premiums can be reasonably and accurately calculated." UTAH CODE § 78B-3-402(3).

Plaintiffs contend that it is unfair to impose the statute of limitations on the Robertsons when they never received a certificate of compliance—which was necessary to file a lawsuit—after filing their first Notice of Intent. *See* ECF No. 107 at 13 ("Construing Utah's Health Care Medical Malpractice Act (2010) to require Plaintiffs to file suit before obtaining a Certificate of Compliance would subvert the express language of the Act, would lead to absurd results, and would be an inefficient use of resources."). But the Robertsons did not receive a certificate of compliance because of their own failure to participate in the prelitigation process.[10] There is no indication that the Robertsons would not have received a certificate of compliance had the Robertsons complied with the prelitigation process by timely filing proper affidavits of merit by the May 19, 2017 deadline. Indeed, present counsel for Plaintiffs filed their affidavits of merit on August 9, 2018 and received a certificate of compliance after a short time on December 17, 2018. In other words, had the Robertsons participated in the required prelitigation process, they would have received the certificate of compliance necessary to file their lawsuit well within the statute of limitations.

In conclusion, the two-year statute of limitations governing the Robertsons' claims, as tolled or otherwise extended by statute, began running on March 9, 2015 and expired no later than December 20, 2017. Plaintiffs filed this case on January 24, 2019. Therefore, the statute of limitations contained in the Utah Health Care Malpractice Act bars this action.

---

[10] The court notes that Plaintiffs' counsel is not responsible for this failure, as the Robertsons had yet to retain the present counsel at that point.

## CONCLUSION AND ORDER

Accordingly, the court GRANTS summary judgment for Defendants.

DATED May 6, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge